# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| JUSTIN M. LONGWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 5:19-CT-3199 |
| v. | ) | |
| | ) | |
| | ) | **AMENDED COMPLAINT** |
| | ) | |
| SHERRY M. BECK, | ) | |
| ANDREW MANSUKHANI, | ) | |
| ANTHONY T. SCARANTINO, | ) | **JURY TRIAL DEMANDED** |
| PATRICK BURRELL, and | ) | |
| MATTHEW W. HAUGHT, | ) | |
| | ) | |
| Defendants. | ) | |
|  | ) | |

## NATURE OF ACTION

1.    This lawsuit arises from the continual sexual abuse and harassment of Plaintiff Justin M. Longworth while in the custody of the federal Bureau of Prisons ("BOP") at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner").

2.    Defendant Sherry M. Beck, a BOP employee, perpetrated repeated sexual acts with Mr. Longworth, forcibly and without his legal consent, while acting in the course and scope of her employment at FCC Butner.  Defendant Beck repeatedly and openly abused her authority as a BOP employee to illegally and unethically prey on Mr. Longworth, an inmate with a documented history that made him particularly vulnerable when subjected to sexual abuse and harassment.

3.     Defendants Mansukhani, Scarantino, Burrell and Haught knew about the sexual relationship that Defendant Beck forced upon Mr. Longworth, but did nothing to intervene, as they had a duty to do under the Prison Rape Elimination Act ("PREA"), BOP policy and the Constitution.

4.     Defendants Mansukhani and Scarantino, wardens at FCC Butner, effectively sanctioned Defendant Beck's unlawful and abusive conduct.  When the sexual abuses were reported to them, they punished Mr. Longworth, but did nothing to reprimand Defendant Beck.  Defendants Mansukhani and Scarantino failed to properly and adequately supervise Defendant Beck and failed to uphold their duty to protect Mr. Longworth and his civil rights while in BOP custody.

5.     Plaintiff Justin Longworth brings this action pursuant to *Bivens*, the federal analog to 42 U.S.C. § 1983 **(Counts I, II & III)**, and state tort law for false imprisonment **(Count IV)**, assault and battery **(Count V)**, intentional infliction of emotional distress **(Count VI)**, and negligent infliction of emotional distress **(Count VII)**.

## PARTIES

6.     **Plaintiff Justin Matthew Longworth**, born March 28, 1980, is a former inmate of the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"), where the events giving rise to the present claims occurred.  He is currently incarcerated at the low security Federal Correction Institution in Petersburg, Virginia ("FCI Petersburg Low").  Prior to his incarceration, Mr. Longworth was a citizen and resident of Springfield, Oregon.

7.     **Defendant Sherry Beck** is a citizen of Wake Forest, Wake County, North Carolina. Ms. Beck was, at all relevant times, a Federal Bureau of Prisons employee and the Secretary of the Facilities Department of FCI Butner, Medium I.  Upon information and belief, she is no longer employed with the BOP.

8.     **Defendant Andrew Mansukhani** is a citizen of Wake Forest, Wake County, North Carolina. Mr. Mansukhani was, at all relevant times a Federal Bureau of Prisons employee and the Correctional Institution Administrator of FCI Butner, Medium. In his role as Warden of FCI Butner, Medium, Defendant Mansukhani was in charge of supervising and overseeing the activities of all correctional officers and BOP employees in the facility.

9.     **Defendant Anthony T. Scarantino** is a citizen of Durham, Durham County, North Carolina. Mr. Scarantino was, at all relevant times a Federal Bureau of Prisons employee and a Correctional Institution Administrator at FCC Butner. As a warden, Defendant Scarantino's duties and responsibilities included supervising and overseeing the activities of all correctional officers and BOP employees in the facility.

10.     **Defendant Patrick Burrell** is a citizen of Gibsonville, Guilford County, North Carolina. Mr. Burrell was, at all relevant times, a Federal Bureau of Prisons employee and a plumber for the FCI Butner facilities.  During Mr. Longworth's work assignment, Mr. Burrell was his immediate supervisor.

11.     **Defendant Matthew W. Haught** is a citizen of Stem, Granville County, North Carolina. Mr. Haught was, at all relevant times, a Federal Bureau of Prison employee

and a Maintenance Mechanic for the FCI Butner facilities. He worked closely with Mr. Longworth and Defendants Burrell and Beck, who also worked in the facilities department.

## JURISDICTION AND VENUE

12.     This action arises under the United States Constitution and federal law, particularly under the provisions of the Eighth Amendment of the Constitution of the United States, *Bivens*, and 28 U.S.C. §§ 2671–80.

13.     This action seeks redress for violations of the civil rights laws of the United States and jurisdiction is therefore invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because all events and allegations set forth herein occurred within this federal judicial district.

## PRISON RAPE ELIMINATION ACT
### 42 U.S.C. § 147

15.     The Prison Rape Elimination Act ("PREA") is a federal statute enacted in 2003. PREA's purpose is to deter sexual assault and abuse in correctional facilities by implementing a zero-tolerance policy. PREA applies to all federal facilities managed by the Federal Bureau of Prisons.

16.     Due to inmates' full dependence on BOP employees for all basic necessities, privileges, and protection, all sexual contact, with or without the consent of the inmate, is considered sexual abuse. Sexual abuse and sexual harassment by a BOP employee on an inmate are defined in section 115.6 of PREA as follows:

**Sexual abuse includes**:

(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;

(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and

(8) Voyeurism by a staff member, contractor, or volunteer.

**Sexual harassment includes:**

(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

17.     Section 115.31(a) of the Act further details that "[t]he agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information they receive regarding an incident of sexual abuse or sexual harassment that occurred in a facility…"

18.     As detailed herein, Defendant Beck's actions constitute both sexual abuse and harassment in accordance with the definitions provided by PREA.  Further, Defendants Mansukhani, Scarantino, Burrell and Haught all failed to report suspicions of abuse, breaching their duties to Mr. Longworth as defined by PREA.

19.     PREA does not give rise to an independent cause of action.  As set forth below, however, Defendants' violations of PREA further evince their violations of the constitutional rights of Mr. Longworth, cognizable under *Bivens*.

## FACTS

20.     On May 10, 2016, Mr. Longworth was sentenced to 94 months in prison, followed by three (3) years of supervised release, by the Honorable Judge Ann Aiken, District Court Judge for the Federal District of Oregon. Mr. Longworth pleaded guilty to one count of Felon in Possession of a Firearm and one count of Possession with Intent to Distribute Methamphetamine.

21.     After his sentencing, Mr. Longworth was transferred from the Lane County Jail to FCI Sheridan in Sheridan, Oregon to begin his sentence.

22.     Upon entering FCI Sheridan, Mr. Longworth disclosed in his intake interview that he had experienced sexual abuse as a child, which was documented in his Bureau of Prisons ("BOP") file.

23. Mr. Longworth also has a well-documented mental health history. He was diagnosed with bipolar disorder, post-traumatic stress disorder, and borderline personality disorder, and has a history of suicide attempts. He is prescribed several medications, which he takes daily to treat his conditions.

24. Mr. Longworth was transferred from FCI Sheridan to FCI Butner on July 22, 2016.

25. On February 17, 2017, Mr. Longworth began his work assignment as a plumber for the prison facilities. Throughout his work assignment, Mr. Longworth received positive evaluations from his supervisors.

26. During his work assignment as plumber, Mr. Longworth came into contact with Defendant Beck, who was the Secretary of Facilities. Defendant Beck was in charge of, *inter alia*, managing the payroll of all inmate employees.

27. Eventually, Defendant Beck took an inappropriate interest in Mr. Longworth, which soon advanced to daily, aggressive sexual harassment and sexual abuse. Mr. Longworth repeatedly rejected Defendant Beck's advances but was unsuccessful in his attempts to abate her conduct.

28. Specifically, Defendant Beck's sexual abuse consisted of: forced oral sex, fondling and groping of the genitals, kissing, and biting. Not only did Defendant Beck engage in these acts herself, but she also forced she Mr. Longworth to perform these same acts on her.

29. The abuse occurred in both the main offices of the facilities and in the attic, where Defendant Beck would lure Mr. Longworth by pretending to need assistance with

work-related tasks.  Despite Defendant Beck spending an unusual amount of time alone with Mr. Longworth, Defendants Mansukhani, Scarantino, Burrell and Haught did nothing to stop, abate or report the sexual abuse Defendant Beck patently perpetrated.

30.     Under fear of retaliation by Defendant Beck and other prison staff, Mr. Longworth did not initially report her misconduct.  Indeed, Defendant Beck ensured Mr. Longworth's silence through continuous manipulation, coercion and bribery.  Mr. Longworth, an inmate at FCI Butner, was not in a position to disobey Defendant Beck, an employee at FCI Butner who handled his payroll.

31.     Defendant Beck's position as an authority figure not only allowed her to sexually abuse Mr. Longworth, but also gave her the ability to coerce Mr. Longworth to comply with almost any other request she made of him. A prime example of Defendant Beck's power was asking Mr. Longworth to tattoo her initials and retirement date on his body. (She promised him that, in return, she would remove her wedding ring.)  Despite tattooing being against prison rules, Mr. Longworth complied with Defendant Beck's request out of fear of reprisal.

32.     Eventually, but long after the abuse had started, some prison staff finally reported Defendant Beck's behavior. Defendant Haught reported Defendant Beck to her facilities supervisors; however, Defendant Haught also protected Defendant Beck by, all while acknowledging her misconduct, chose not to report it to his superiors.  Indeed, Defendant Haught did not report Defendant Beck to a Special Investigative Agent or to the wardens, Defendants Mansukhani and Scarantino, as was required by prison policy.

33.     Instead of taking appropriate disciplinary action against Defendant Beck, on September 26, 2018,  Mr. Longworth was fired from his work assignment.  In addition to enduring repeated sexual abuse, Mr. Longworth was also no longer able to earn money.

34.     Mr. Longworth was then placed in the Special Housing Unit (SHU), more commonly known as solitary confinement. Upon information and belief, the wardens, Defendants Mansukhani and Scarantino, made the decision to send Mr. Longworth to SHU instead of reprimanding or terminating Defendant Beck and instead of providing Mr. Longworth the counseling he required and was entitled to under PREA.

35.     When Defendant Beck discovered Mr. Longworth's termination from his work assignment, she sent $100.00 to his prison account via Western Union, further tightening her hold over – and resulting abuse of – Mr. Longworth.

36.     Upon his move to SHU, Mr. Longworth also gained the courage to report Defendant Beck's misconduct himself. On September 28, 2018, Mr. Longworth reported Defendant Beck to Special Investigative Agent Sean Kearney.

37.     Just days after Mr. Longworth made his report, an investigation began and Defendant Beck was terminated from her employment. To Mr. Longworth's knowledge, no further legal, criminal or disciplinary action has been taken against Defendant Beck.

38.     As a result of the investigation, on January 16, 2019, the BOP ordered Mr. Longworth's transfer from FCI Butner to FCI Petersburg Low. On the transfer order, it was noted that on September 28, 2018, "Longworth incurred an incident report, which resulted in an OIG investigation. The investigation has been concluded and it has been determined that Longworth can no longer be housed on the Butner Complex."

39. After Mr. Longworth's transfer to FCI Petersburg, Defendant Beck continued to harass and intimidate Mr. Longworth by sending him sexually explicit and threatening letters. She continued this particular conduct after her termination from the BOP, beyond the course and scope of her employment.

40. Mr. Longworth's abuse was willingly perpetrated by Defendant Beck.

41. The abuse was permitted to continue, and effectively sanctioned, by the deliberate indifference Defendants Mansukhani, Scarantino, Burrell, and Haught demonstrated to Mr. Longworth's rights. Indeed, these Defendants knew of Defendant Beck's conduct, but failed to report or properly supervise Defendant Beck.

42. It was well-documented by the BOP that Mr. Longworth was the victim of childhood abuse and suffered from serious mental health issues. The sexual abuse perpetrated by Defendant Beck and disregarded by Defendants Mansukhani, Scarantino, Burrell, and Haught caused Mr. Longworth serious emotional distress and trauma.

## COUNT I
### *BIVENS* VIOLATIONS
**(Against Defendant Beck)**

43. Paragraphs 1 through 42 are realleged as though fully set forth herein.

44. As set forth above, Defendants Beck acted under color of state law, as employees of the BOP at FCC Butner, and within the course and scope of their employment.

45. Defendant Beck, as described herein, forced Mr. Longworth in engage in sexual acts with her without his legal consent, while he was in the custody of the BOP and

using her authority as a BOP employee. Specifically, Defendant Beck forced Mr. Longworth to give to her and receive from her oral sex, fondled and groped his genitals, required him to manually and digitally touch her genitals, kissed and bit Mr. Longworth in a sexual manner.

46. Her repeated sexual assault and harassment of Mr. Longworth was perpetrated in violation of PREA, FCC Butner policy, the law and Mr. Longworth's well-established constitutional rights while in custody. Any reasonable prison employee would know that using their position to force an inmate to have a sexual encounter with him or her is entirely unreasonable and excessive because such contact is illegal and explicitly prohibited by the BOP.

47. Defendant Beck's acts constituted a violation of Mr. Longworth's Fourth Amendment right to be free from illegal and unreasonable seizures by the use of force. Defendant Beck used authorized force against Mr. Longworth when she committed repeated sexual battery against him without consent or lawful authority. The conduct was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Mr. Longworth. This was a violation of Mr. Longworth's rights under the Fourth Amendment to the United States Constitution.

48. Defendant Beck's repeated sexual assaults of Mr. Longworth also violated his right to be free from cruel and unusual punishment under the Eighth Amendment. The sexual abuse described herein is objectively serious and Defendant Beck's actions were plainly intentional.

49. Defendant Beck's actions, as described herein, were intentional or were willful, wanton and in reckless disregard of Mr. Longworth's rights.

50. As a direct and proximate result of the Defendants' deliberate indifference to or reckless disregard for Mr. Longworth's rights, he suffered serious physical injury, pain and suffering, and severe mental anguish. Mr. Longworth is entitled to any and all compensation permitted by law for the damages suffered as a result of Defendant Beck's acts. Mr. Longworth also seeks and is entitled to punitive damages.

51. Mr. Longworth is also entitled to recover reasonable costs and attorney's fees pursuant to 42 U.S.C. §1988.

### <u>COUNT III</u>
### *BIVENS* VIOLATIONS
### (Against Defendants Burrell, Haught, Mansukhani and Scarantino)

52. Paragraphs 1 through 51 are realleged as though fully set forth herein.

53. As set forth above, Defendants Burrell, Haught, Mansukhani and Scarantino each acted under color of state law, as employees of the BOP at FCC Butner, and within the course and scope of their employment.

54. At all times relevant herein the Defendants Burrell, Haught, Mansukhani and Scarantino had a constitutional duty under the Eighth Amendment to FCI Butner inmates to ensure conditions of confinement that are safe, humane, and secure. That encompassed a duty to protect inmates, including Mr. Longworth, from sexual abuse and sexual harassment by BOP employees.

55. As facilities department employees, Defendants Haught and Burrell knew Defendant Beck was spending significant unsupervised time alone with Mr. Longworth

while he was on his work assignment. Defendant Burrell, as Mr. Longworth's work supervisor, was responsible for Mr. Longworth's whereabouts and activities.

56. Defendants Haught and Burrell further knew that, while alone together, Defendant Beck was engaging in sexual acts with Mr. Longworth, in violation of prison policy and PREA and without Mr. Longworth's legal consent.

57. Defendant Burrell did not report this conduct, as required by prison policy and by PREA.

58. Defendant Haught did not report this conduct for a long time, as required by prison policy and by PREA, and also did not report the misconduct to the appropriate persons – including the wardens – or through the proper channels. Defendant Haught's reporting of the conduct through improper channels resulted in Mr. Longworth being terminated from his work assignment, and resulted in no reprimand for Defendant Beck.

59. Defendants Mansukhani and Scarantino also knew of Defendant Beck's misconduct, but failed to protect Mr. Longworth from ongoing sexual abuse and harassment at the hands of Defendant Beck. When they did take action, they punished Mr. Longworth – not Defendant Beck – by removing him from his work assignment and placing him SHU. This was reckless and violated Mr. Longworth's constitutional rights under the Eighth Amendment.

60. The conditions of Mr. Longworth's incarceration posed a substantial risk of harm to Mr. Longworth. Defendants Burrell, Haught, Mansukhani and Scarantino all knew of, but disregarded, the excessive risk to Mr. Longworth's safety. By allowing Defendant Beck to repeatedly commit this inappropriate and unwanted sexual contact unchecked,

Defendants Burrell, Haught, Mansukhani and Scarantino disregarded the severe, ongoing and substantial risk that Mr. Longworth would be subjected to ongoing, severe sexual abuse and harassment, including forced sex acts.

61. This constituted deliberate indifference to or reckless disregard for the rights of Mr. Longworth.

62. As a direct and proximate result of the Defendants' deliberate indifference to or reckless disregard for Mr. Longworth's rights, he suffered serious physical injury, pain and suffering, and severe mental anguish. Mr. Longworth is entitled to any and all compensation permitted by law for the damages suffered as a result of Defendants' acts and omissions. Mr. Longworth also seeks and is entitled to punitive damages.

63. Mr. Longworth is also entitled to recover reasonable costs and attorney's fees pursuant to 42 U.S.C. §1988.

## COUNT III
### *BIVENS* VIOLATIONS – FAILURES TO TRAIN AND/OR SUPERVISE
### (Against Defendants Mansukhani and Scarantino)

64. Paragraphs 1 through 63 are realleged as though fully set forth herein.

65. Defendants Mansukhani and Scarantino are wardens at FCC Butner and supervised Defendant Beck, as well as Defendants Burrell and Haught. They acted under color of state law, in the course and scope of their employment with the BOP.

66. In that position, Defendants Mansukhani and Scarantino had exclusive control over the training and supervision of Defendants Beck, Burrell and Haught, and had a duty to do so properly and effectively. They failed to do so, despite having knowledge of the need for better and additional training and supervision.

67. Specifically, Defendants Mansukhani and Scarantino failed to provide adequate training regarding sexual abuse and sexual harassment of inmates. They further failed to provide effective training regarding PREA, including training on the rights of inmates, prohibitions on sexual activity with inmates and reporting obligations of BOP employees who suspect such improper activity.

68. These training policies, practices and customs were known to Defendants Mansukhani and Scarantino, to be inadequate, dangerous and manifestly likely to cause harm.

69. Defendants Mansukhani and Scarantino also failed to adequately supervise their subordinates, including ensuring that their subordinates did not violate the constitutional rights of inmates.

70. The lack of training and supervision by Defendants Mansukhani and Scarantino was a cause of the ongoing sexual abuse and harassment by Defendant Beck.

71. Further, the lack of training and supervision by Defendants Mansukhani and Scarantino was a cause of the failures to report the abuse and harassment by Defendants Burrell and Haught, which permitted the misconduct to continue for an extended period of time.

72. Defendants Mansukhani and Scarantino were aware, prior to Mr. Longworth's incarceration, of the need for better training, protocols and/or supervision with respect to sexual abuse and sexual harassment of inmates, and the reporting of suspected abuses. Their failures, as described herein, constitute deliberate indifference to or reckless disregard for Mr. Longworth's rights.

73. The conditions of Mr. Longworth's incarceration posed a substantial risk of harm to Mr. Longworth. Defendants Mansukhani and Scarantino knew of, but disregarded, the excessive risk to Mr. Longworth's safety. By failing to adequate train and supervise prison employees, including Defendants Beck, Burrell, and Haught, Defendants Mansukhani and Scarantino disregarded the severe, ongoing and substantial risk that inmates, including Mr. Longworth, would be subjected to ongoing, severe sexual abuse and harassment, including forced sex acts.

74. As a direct and proximate result of Defendants' failure to train and/or supervise their subordinates, Mr. Longworth was sexually abused and harassed in violation of the Eighth Amendment of the United States Constitution.

75. Further, when the conduct was reported by Defendants Haught and Burrell as supervisors and wardens, Defendants Mansukhani, and Scarantino were responsible for all subordinate personnel with whom Mr. Longworth interacted during his incarceration and oversaw their actions. Indeed, Defendants Mansukhani and Scarantino failed to supervise their subordinate Defendant Beck, who managed to evade detection while sexually abusing Mr. Longworth. Furthermore, Defendants Mansukhani and Scarantino failed to supervise Defendants Haught and Burrell and ensure they were fulfilling their duties to detect, prevent, and report sexual abuse.

76. As a direct and proximate result of the Defendants' deliberate indifference to or reckless disregard for Mr. Longworth's rights, he suffered serious physical injury, pain and suffering, and severe mental anguish. Mr. Longworth is entitled to any and all

compensation permitted by law for the damages suffered as a result of Defendants' acts and omissions. Mr. Longworth also seeks and is entitled to punitive damages.

77. Mr. Longworth is also entitled to recover reasonable costs and attorney's fees pursuant to 42 U.S.C. §1988.

### COUNT IV
### FALSE IMPRISONMENT
**(Against Defendant Beck)**

78. Paragraphs 1 through 77 are realleged as though fully set forth herein.

79. In the alternative, if Defendant Beck was not acting within the course and scope of her employment with BOP during her sexual abuse and harassment of Mr. Longworth, such conduct constituted false imprisonment.

80. Defendant Beck unlawfully detained Mr. Longworth against his will for the sole purpose of engaging in sexual abuse and harassment.

81. Specifically, Defendant Beck used her power and authority in a custodial setting to confine Mr. Longworth – including in an empty office and/or storage room – to force him to engage in sexual acts.

82. The detainment of Mr. Longworth was done without legal authority and was unreasonable under the circumstances.

83. Defendant Beck is sued individually and in the alternative for actions that exceeded the scope of her authority, were malicious and corrupt.

84. As a direct and proximate cause of Defendant Beck's false imprisonment of Mr. Longworth, Defendant Beck caused him damage, including psychological trauma, emotional distress and severe mental anguish.

85.     Mr. Longworth seeks all damages caused by the false imprisonment committed against him by Defendant Beck.

## COUNT V
## ASSAULT AND BATTERY
### (Against Defendant Beck)

86.     Paragraphs 1 through 85 are realleged as though fully set forth herein.

87.     In the alternative, if Defendant Beck was not acting within the course and scope of her employment with BOP during her sexual abuse and harassment of Mr. Longworth, such conduct constituted assault and battery.

88.     The intentional acts of Defendant Beck described herein put Mr. Longworth in actual, subjective apprehension of imminent harmful or offensive contact.

89.     Mr. Longworth's apprehension was objectively reasonable under the circumstances then existing and an ordinary person acting with ordinary care and prudence under the same or similar circumstances described in this Complaint would believe that imminent harm or offensive contact was going to occur.

90.     Defendant Beck's intentional acts of repeated sexual abuse and harassment against Mr. Longworth, as defined in section 115.6 of PREA, and performing non-consensual sex acts with Mr. Longworth constituted a harmful or offensive contact with Mr. Longworth.

91.     As a direct and proximate cause of Defendant Beck's intentional acts, Mr. Longworth suffered harmful and offensive contact.

92. Defendant Beck is sued individually and in the alternative for actions that exceeded the scope of her authority, and were malicious and corrupt.

93. As a direct and proximate cause of the assault and battery described, Defendant Beck caused damage to Mr. Longworth including psychological trauma, emotional distress and severe mental anguish.

94. Mr. Longworth seeks all damages caused by the assault and battery committed against him by Defendant Beck.

## COUNT VI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Beck)

95. Paragraphs 1 through 94 are realleged as though fully set forth herein.

96. In the alternative, if Defendant Beck was not acting within the course and scope of her employment with BOP during her sexual abuse and harassment of Mr. Longworth, such conduct constituted the intentional infliction of emotional distress of Mr. Longworth by engaging in the sexual abuse and harassment of Mr. Longworth.

97. In addition to her physical sexual abuse of Mr. Longworth, following her employment with BOP, Defendant Beck continued to sexually harass and threaten Mr. Longworth in repeated correspondence sent to him at FCI Petersburg Low.

98. Defendant Beck's conduct was both extreme and outrageous, and was engaged in with knowledge that emotional distress would almost certainly occur. Indeed, Mr. Longworth suffered and continues to suffer severe emotional distress as a direct result of Defendant Beck's conduct.

99.	Defendant Beck is sued individually and in the alternative for actions that exceeded the scope of her authority and were malicious and corrupt.

100.	As a direct and proximate cause of Defendant Beck's conduct, as described herein, Defendant Beck caused damage to Mr. Longworth including psychological trauma, emotional distress and severe mental anguish.

101.	Mr. Longworth seeks all damages caused by the intentional infliction of emotional distress committed against him by Defendant Beck.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Beck)

102.	Paragraphs 1 through 101 are realleged as though fully set forth herein.

103.	In the alternative, if Defendant Beck was not acting within the course and scope of her employment with BOP during her sexual abuse and harassment of Mr. Longworth, such conduct constituted the negligent infliction of emotional distress of Mr. Longworth by engaging in a sexual relationship with Mr. Longworth.

104.	In addition to the physical relationship with Mr. Longworth, following her employment with BOP, Defendant Beck continued to send sexually explicit and threatening letters to Mr. Longworth while he was incarcerated at FCI Petersburg Low.

105.	Defendant Beck's conduct was negligent, and it was reasonably foreseeable that it would cause Mr. Longworth severe emotional distress. Indeed, Mr. Longworth suffered and continues to suffer severe emotional distress as a direct result of Defendant Beck's negligent conduct.

106. Defendant Beck is sued individually, for both her actions following her employment with BOP and in the alternative for actions during her employment with BOP that exceeded the scope of her authority, were malicious and corrupt.

107. As a direct and proximate cause of Defendant Beck's conduct, as described herein, Defendant Beck caused damage to Mr. Longworth including psychological trauma, emotional distress and severe mental anguish.

108. Mr. Longworth seeks all damages caused by the negligent infliction of emotional distress committed against him by Defendant Beck.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays that this Court enter judgment against each Defendant, and grant:

A. Damages to Plaintiff Justin Longworth as compensation for all injuries and losses which were caused by the negligence and intentional acts and omissions of the Defendants, without any negligence on the part of Plaintiff contributing thereto, jointly and severally, in an amount to be determined at trial;

B. Punitive damages on all claims as allowed by law against the Defendants, in an amount to be determined at trial;

C. Attorneys' fees and the costs associated with this action 42 U.S.C. § 1988, including expert witness fees, on all claims as allowed by law; and

D.     Any further relief that this Court deems just and proper, and any other appropriate relief available at law and equity.

## REQUEST FOR A TRIAL BY JURY

Plaintiff requests a trial by jury.

Dated: June 1, 2020            Respectfully submitted,

                            __/s/ Catharine E. Edwards_____
                            Catharine E. Edwards
                            North Carolina Bar No. 52705
                            **EDWARDS KIRBY, LLP**
                            3201 Glenwood Avenue, Suite 100
                            Raleigh, North Carolina 27612
                            Telephone:    (919) 780-5400
                            Facsimile:     (919) 800-3099
                            cedwards@edwardskirby.com

                            ***Counsel for Plaintiff Justin Longworth***

# CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I electronically filed on behalf of the Plaintiff the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons:

Landon G. Van Winkle
Stubbs & Perdue, P.A.
9208 Falls of Neuse Road, Suite 201
Raleigh, NC 27615
(919) 870-6258
(919) 870-6259 (fax)
lvanwinkle@stubbsperdue.com

*Attorney for Defendant Sherry Beck*

Sharon C. Wilson
United State Attorney's Office- EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
(919) 856-4026
(919) 856-4821 (fax)
Sharon.wilson2@usdoj.gov

*Attorney for Defendant A. Mansukhani*

This the 1st day of June, 2020.

/s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No.: 52705
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, NC 27612
Telephone: (919) 780-5400
Facsimile: (919) 800-3099
E-Mail: cedwards@edwardskirby.com

*Attorney for Plaintiff*