## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| JUSTIN M. LONGWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:19-CT-3199 |
| v. | ) | |
| | ) | |
| SHERRY M. BECK, | ) | |
| ANDREW MANSUKHANI, | ) | |
| ANTHONY T. SCARANTINO, | ) | |
| PATRICK BURRELL, and | ) | |
| MATTHEW W. HAUGHT, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT MANSUKHANI'S MOTION TO DISMISS

Plaintiff, by and through his counsel, files this opposition to the Motion To Dismiss filed by Defendant Mansukhani (Dkt. No. 45.) Mr. Longworth's *Bivens* claims against Defendant Mansukhani – for personal deliberate indifference and failures to train and supervise – are standard failure-to-protect claims, a long-established *Bivens* context that does not require extension of the *Bivens* doctrine. In addition, the Amended Complaint makes substantial allegations, supported by factual detail, that demonstrate Defendant Mansukhani acted with deliberate indifference in his personal conduct and his training and supervision of his staff. Due to Defendant Mansukhani's violations of Mr. Longworth's well-established constitutional rights, he is not entitled to qualified immunity for his misconduct. For these reasons, the Motion to Dismiss should be denied in its entirety.[1]

---

[1] To the extent the Court finds that more specific pleading to be necessary, Plaintiff respectfully requests that, instead of dismissing these claims, Plaintiff be given leave to amend his complaint to remedy the deficiency.

## FACTUAL BACKGROUND

This lawsuit arises from the continual sexual abuse and harassment of Plaintiff Justin M. Longworth while in the custody of the federal Bureau of Prisons ("BOP") at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner") by BOP employee, Defendant Sherry M. Beck. (Am. Compl. ¶ 1.)[2] Defendant Beck repeatedly and openly abused her authority as a BOP employee to illegally and unethically prey on Mr. Longworth, an inmate with a documented history that made him particularly vulnerable when subjected to sexual abuse and harassment. (Am. Compl. ¶ 2.) Defendants Burrell and Haught knew about the sexual relationship that Defendant Beck forced upon Mr. Longworth, but did nothing to intervene, as they had a duty to do. (Am. Compl. ¶ 3.)

On May 10, 2016, Mr. Longworth began a 94 month prison sentence at FCI Sheridan. (Am. Compl. ¶¶ 20, 21.) Upon entering FCI Sheridan, Mr. Longworth disclosed in his intake interview that he had experienced sexual abuse as a child, which was documented in his BOP file, along with his mental health history of bipolar disorder, post-traumatic stress disorder, borderline personality disorder, and history of suicide attempts, for which he was medicated. (Am. Compl. ¶¶ 22, 23.)

Mr. Longworth was transferred from FCI Sheridan to FCI Butner on July 22, 2016. (Am. Compl. ¶ 24.) Defendant Mansukhani, the Warden, was in charge of supervising and overseeing the activities of all correctional officers and BOP employees in the facility. (Am. Compl. ¶ 8.) On

---

[2] Defendant appears to base some of his factual information on the original complaint (Dkt. No. 1), which is no longer operable here, as it has been superseded by the Amended Complaint (Dkt. No. 27.) The only complaint in effect, and the only complaint relevant to the instant Motion to Dismiss, is the Amended Complaint. *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir.2001)("The general rule ... is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.").

2

February 17, 2017, Mr. Longworth began his work assignment as a plumber for the prison facilities. (Am. Compl. ¶ 25.) During his work assignment, Mr. Longworth came into contact with Defendant Beck, the Secretary of Facilities, who was in charge of managing the payroll of all inmate employees. (Am. Compl. ¶ 26.) Defendant Beck took an inappropriate interest in Mr. Longworth, which soon advanced to daily, aggressive sexual harassment and sexual abuse, which Mr. Longworth repeatedly rejected and attempted to evade. (Am. Compl. ¶ 27.) Specifically, Defendant Beck's sexual abuse consisted of: forced oral sex, fondling and groping of the genitals, kissing, and biting. (Am. Compl. ¶ 28.) Fear of retaliation, manipulation, coercion and bribery initially prevented Mr. Longworth from reporting Defendant Beck's misconduct himself. (Am. Compl. ¶ 30.)

Defendant Beck's abuse occurred, however, openly; it happened in both the main offices of the Facilities Department and in the attic, where Defendant Beck spent an unusual amount of unsupervised time with Mr. Longworth during his work assignment. (Am. Compl. ¶ 29.) Defendant Mansukhani did nothing to stop, abate or report the sexual abuse Defendant Beck patently perpetrated. (Am. Compl. ¶ 29.) Instead of taking appropriate disciplinary action against Defendant Beck, on September 26, 2018, Mr. Longworth was fired from his work assignment and was thus no longer able to earn money. (Am. Compl. ¶ 33.) Mr. Longworth was then moved to the Special Housing Unit ("SHU"), a decision that was made by Defendant Mansukhani, instead of reprimanding or terminating Defendant Beck and instead of providing Mr. Longworth the counseling he required and was entitled to under PREA. (Am. Compl. ¶ 34.) There, Mr. Longworth personally reported Defendant Beck's misconduct himself, on September 28, 2018, to Special Investigative Agent Sean Kearney. (Am. Compl. ¶ 36.)

Just days after Mr. Longworth made his report, an investigation began and Defendant Beck was terminated from her employment. (Am. Compl. ¶ 37.) To Mr. Longworth's knowledge, no further legal, criminal or disciplinary action has been taken against Defendant Beck. (Am. Compl. ¶ 37.) As a result of the investigation, on January 16, 2019, the BOP also ordered Mr. Longworth's transfer from FCI Butner to FCI Petersburg Low, noting that "Longworth incurred an incident report, which resulted in an OIG investigation. The investigation has been concluded and it has been determined that Longworth can no longer be housed on the Butner Complex." (Am. Compl. ¶ 38.)

Mr. Longworth instituted this action against, *inter alia*, Defendant Mansukhani pursuant to *Bivens*, the federal analog to 42 U.S.C. § 1983, for his for their deliberate indifference to the known, substantial risk to Mr. Longworth's safety (Count II) and for failures to train and supervise (Count III). Defendant Mansukhani filed a motion to dismiss and accompanying memorandum on September 4, 2020 (Dkt. Nos. 45 and 46), which Plaintiff herein opposed.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as long as it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the complaint, the court "construe[s] facts in the light most favorable to the plaintiff and draw[s] all reasonable inferences in [her] favor." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). A court "should not dismiss a complaint for failure to state a claim unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts

in support of his claim entitling him to relief." *Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 248 (4th Cir. 2005).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint need not contain "detailed factual allegations" so long as the allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.

Where a complaint does not provide sufficient factual detail, a court should allow the plaintiff leave to amend, rather than dismissing the complaint. "Leave to amend a pleading should be freely granted to correct or clarify an insufficient statement of the court's jurisdictional basis over the suit." *Medoil Corp. v. Clark*, 753 F.Supp. 592, 596 (W.D.N.C. 1990).

## ARGUMENT

### I.     Plaintiff's *Bivens* Claims Satisfy the *Abbasi* Test

In *Ziglar v. Abbasi*, the United States Supreme Court clarified the framework for determining whether a constitutional violation by a federal official creates an implied right of action under *Bivens*. 137 S. Ct. 1843, 1859–60, 198 L. Ed. 2d 290 (2017). *Abbasi* set forth a two-prong test, requiring that a court first determine whether the claim asserted differs materially from a previously-established *Bivens* remedy such that it constitutes a "new *Bivens* context." *Id.* If the claim does not, it can proceed. If the claim does create a new *Bivens* context, then the court must determine whether special factors counsel against the extension of a remedy to such context. *Id.*

Mr. Longworth's *Bivens* claims against Defendant Mansukhani satisfy the first prong of the test

and, even if they did not, no special factors counsel against the minor extension that would result.

### A. Plaintiff's *Bivens* Claims Are Not A New Context

Defendant attempts to paint previously-recognized *Bivens* claims in the narrowest possible

context, to frame its argument that Mr. Longworth's claims present a "new *Bivens* context." That

is erroneous. A closer reading of relevant precedent makes clear that (1) the United Supreme Court

recognized an implied right of action under *Bivens* for failure to protect prisoners from a known

safety risk in *Farmer v. Brennan*, and (2) courts across the country have characterized the *Carlson*

context of *Bivens* as "mistreatment of prisoners" more generally, which encompasses Mr.

Longworth's claims.

> i. The *Farmer v. Brennan* Precedent Provides a Firmly Established Failure-to-Protect *Bivens Context*

Mr. Longworth's *Bivens* claims – for failure to protect him, a prisoner, from the obvious

risk of sexual assault by Defendant Beck – do not present a new *Bivens* context. To constitute a

new context, the case must differ "in a meaningful way from previous *Bivens* cases decided by this

Court. *Abbasi,* 137 S. Ct. at 1859. Mr. Longworth's claims fall well within the contours of the

Supreme Court's decision in *Farmer v. Brennan,* 511 U.S. 825, 832-49, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994).

In *Farmer v. Brennan*, the Supreme Court evaluated a *Bivens* claim brought under the

Eighth Amendment for "failure to protect" an inmate from sexually assaultive and violent attack

by another prisoner. 511 U.S. at 829-34. The *Farmer* Court held that "a prison official may be held

liable under the Eighth Amendment for acting with 'deliberate indifference'" to an inmate's safety

and provided the authoritative standard for analyzing "deliberate indifference" for a *Bivens* claim.

*Id.* at 825, 832-49.

In the wake of *Abbasi*, courts analyzing this issue have found that *Farmer* indeed established a failure-to-protect claim under *Bivens*, such that these claims do not present a "new *Bivens* context." As the Third Circuit explained, "[i]t seems clear, then, that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment." *Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018)(citing *Doty v. Hollingsworth*, Civ. No. 15-3016, 2018 WL 1509082, at *3 (D.N.J. Mar. 27, 2018)(holding that an Eighth Amendment failure-to-protect claim premised on inmate-on-inmate violence is not a new context given sufficient similarity to both *Carlson* and *Farmer*)); *see also Walker v. Schult*, No. 9:11-CV-287 (DJS), 2020 WL 3165177, at *3 (N.D.N.Y. May 29, 2020)("In *Farmer v. Brennan*, the Supreme Court specifically allowed a *Bivens* action to proceed against federal prison officials, upon the ground that they violated the Eighth Amendment by being deliberately indifferent to an inmate's safety"); *Garraway v. Cuifo*, 2020 WL 860028, at *2 (E.D. Cal. Feb. 21, 2020)( "Though the majority in *Abbasi* did not acknowledge that the Court had explicitly 'approved of an implied damages remedy' in *Farmer*, neither did it reject that it had recognized the availability of a *Bivens* remedy in the context presented by *Farmer.*").

Defendant advances the specious argument that, because *Farmer* was not specifically enumerated in the *Abbasi* opinion, it must not be a recognized *Bivens* context. That conclusory assumption contradicts both the tenants of construction and years of precedent. Defendant's position urges this Court to contravene *Farmer* – Supreme Court precedent – in favor of an implication Defendant derives from *Abbasi*; this is directly contrary to the instruction of the Supreme Court itself. "The Court neither acknowledges nor holds that other courts should ever conclude that its more recent cases have, by implication, overruled an earlier precedent. Rather, lower courts should follow the case which directly controls, leaving to this Court the prerogative

of overruling its own decisions. *Agostini v. Felton*, 521 U.S. 203, 207, 117 S. Ct. 1997, 2002, 138 L. Ed. 2d 391 (1997).

For this reason, lower courts faced with this question have not adopted the position Defendant effectively advances – that *Abbasi* implicitly overruled *Farmer*. *See,* e.g., *Walker*, 2020 WL 3165177, at *3 ("This Court is not empowered to presume that simply because *Abbasi* does not reference *Farmer* that the case has been somehow impliedly overruled.")(citing *Agostini*, 521 U.S. at 237); *Garraway*, 2020 WL 860028, at *2 ("the lower courts [are] to 'follow the case which directly controls,' even if that precedent 'appears to rest on reasons rejected in some other line of decisions'")(quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).

As Defendant concedes, the Supreme Court was obviously aware of *Farmer* when it made its decision in *Abbasi*. (Dkt. No. 49 at 10.) It was plainly aware, then, that the *Farmer* context of *Bivens* had been widely recognized. *See, e.g., Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016)("There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation")(citing *Farmer*, 511 U.S. at 832). As the Third Circuit aptly pointed out, "[i]t may be that the Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context. *Farmer* continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury." *Bistrian*, 912 F.3d at 91. This construction is bolstered by other language in *Abbasi*, which states that the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants'… **for the past 30 years**." *Abbasi*, 137 S. Ct. at 1857, 198 L. Ed. 2d 290 (internal citations omitted)(emphasis added). As

*Farmer* was decided just 23 years before *Abbasi*, it is evident that the Court did not think *Farmer* constituted an extension of *Bivens* to a new context, but rather that it fell within the parameters of the conditions of confinement claims recognized in *Carlson*.

> ii. Carlson *Recognizes Claims for Mistreatment of Prisoners under* Bivens

Indeed, *Abbasi* characterized the *Carlson v. Green* decision as recognizing "a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care." *Abbasi*, 137 S. Ct. at 1864 (citing *Carlson v. Green*, 446 U.S. 14 (1980)). *Abbasi* apparently considered *Farmer* to fall squarely within the *Carlson* context of *Bivens* because it viewed *Carlson* as encompassing a slightly broader context – prisoner mistreatment – as opposed to the more specific context Defendant urges – failure to provide medical treatment.

Indeed, *Carlson* has widely been recognized as authorizing *Bivens* claims for prisoner mistreatment more generally. *See Walker*, No. 2020 WL 3165177 at *4 ("the Supreme Court refused to recognize any such dichotomy because it could not identify any material difference, in the prison context, between conditions of confinement and medical care")(citing *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *McLean v. Gutierrez*, No. EDCV15275RGKSP, 2017 WL 6887309, at *19 (C.D. Cal. Sept. 28, 2017), *report and recommendation adopted*, No. EDCV15275RGKSP, 2018 WL 354604 (C.D. Cal. Jan. 10, 2018)("[w]hile plaintiff's case arises in a slightly different *Bivens* context, it nonetheless has similar aspects to *Carlson* in that it is an Eighth Amendment Cruel and Unusual Punishment claim against a federal prison official. Indeed, an excessive force claim is a quintessential civil rights claim, with the Supreme Court having long recognized that excessive force by a prison official violates the Eighth Amendment, just as deliberate indifference to medical needs does.")(citing *Hudson v. McMillian*, 503 U.S. 1, 5–12, 112 S.Ct. 995, 998 and *Estelle v. Gamble*, 429 U.S. 97,

9

104–06, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976)); *Walker v. Schult*, 365 F. Supp. 3d 266, 284 (N.D.N.Y. 2019)("the Supreme Court has recognized the viability of a Bivens-type action in the context of an Eighth Amendment claim for deliberate indifference to the mistreatment of a prisoner")(citing *Carlson*, 446 U.S. 14).

Moreover, *Abbasi* mandates that only claims which **meaningfully** differ from a previously recognized *Bivens* context constitute a "new context." 137 S. Ct. at 1859–60. It provided the following non-exhaustive list of differences that should be considered meaningful: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* No such differences exist here.

Mr. Longworth's claims are standard prison mistreatment claims, which have long been recognized under *Bivens*. Indeed, Defendant has wholly failed to identify any difference, much less a **meaningful** difference, between the claims recognized in *Carlson* (particularly when coupled with *Farmer*) and Mr. Longworth's claims. *See Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019)(*"Ziglar* and *Hernandez* are not the silver bullets defendants claim them to be—plaintiff's claims are run-of-the-mill challenges to "standard law enforcement operations" that fall well within *Bivens* itself…. Yet at no point do defendants articulate why this case "differ[s] in a meaningful way" under *Ziglar*'s rubric.") Accordingly, the Court should find that Mr. Longworth's claims do not present a "new *Bivens* context" and are, therefore, cognizable post-*Abbasi*.

## B. Even if Mr. Longworth's Claims Were A New *Bivens* Context, Extension Would Be Warranted

Although Plaintiff strongly asserts that Mr. Longworth's claim does not constitute a new *Bivens* context, even if it did, it should be recognized under *Bivens* because no special factor counsels against this minor extension of the *Bivens* doctrine. Defendant identifies only four special factors it argues are relevant here: (1) whether there are alternate avenues of relief available; (2) whether Congress has indicated that it does not wish to provide a remedy; (3) separation of powers, including the purportedly "unworkable" standard; and (4) the burden on the government if such claims are recognized. 137 S. Ct. at 1857-63. As explained below, these factors do not counsel against a modest extension of a *Bivens* to Mr. Longworth's claims. *Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018)(concluding that "the special factors articulated in *Abbasi* do not counsel against extending a *Bivens* remedy to the narrow claim here").

### i. Mr. Longworth Has No Alternative Remedy.

As Mr. Longworth has no adequate alternative remedy, this does not constitute a special factor counseling against a *Bivens* action; indeed, it counsels just the opposite. Defendant erroneously relies on the Administrative Procedures Act ("APA") and injunctive relief as available remedies, but neither of those remedies provide for damages. The Supreme Court has indicated that where damages are not available, a *Bivens* suit is preferable because it allows for damages and thereby provides a deterrent effect that is not present when a remedy does not provide for damages. See *Carlson,* 446 U.S. at 21–23 (*Bivens* preferable to a suit under the FTCA). The argument Defendant advances – that injunctive relief and similar programmatic relief available under the ADA are comparable to monetary damages—is simply untenable. *See McLean v. Gutierrez*, No. EDCV15275RGKSP, 2017 WL 6887309, at *19 (C.D. Cal. Sept. 28, 2017), *report and recommendation adopted,* No. EDCV15275RGKSP, 2018 WL 354604 (C.D. Cal. Jan. 10,

2018)("[i]t is also unclear how defendants' suggestion of injunctive relief would fulfill plaintiff's goal to seek relief for Hernandez's past alleged wrong."). Accordingly, this factor does not counsel against permitting Mr. Longworth's *Bivens* claims.

ii.      *Congress Demonstrated No Intent to Limit Prisoner Litigation.*

Contrary to Defendant's assertions, Congress has not indicated an intent to limit prisoner litigation for legitimate claims by inmates against federal jailers, like the one at issue here. Defendant has cherry-picked two Congressional acts – the PLRA (42 U.S.C. § 1997e) and PREA (34 U.S.C. § 34301) – that created protections for prisoners without a cause of action, but has wholly ignored the context in which those statutes were enacted, including the preexistence of the Federal Torts Claims Act (28 U.S.C. § 1346(b)) and *Bivens*, both of which provide a critical complement to these other two statutes.

The Federal Torts Claims Act provides a damages remedy against the United States for the tortious conduct of its officers and employees. 28 U.S.C. § 1346(b). The FTCA indicates the wholesale willingness of Congress to provide prisoners with a right of action under federal law. Moreover, the language of the FTCA provides it is an exclusive remedy for acts and omissions *except* those that violate the constitution (i.e., those that give rise to *Bivens* claims). Accordingly, it is evident that Congress intended the FTCA to provide a cause of action that, *inter alia*, inmates could bring alongside *Bivens* claims. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed. 2d 456 (2001) (noting it is " 'crystal clear' that Congress intended the FTCA and *Bivens* to serve as 'parallel' and 'complementary' sources of liability")(quoting *Carlson*, 446 U.S. at 20, 100 S.Ct. 1468).

When the PLRA and PREA were enacted, Congress knew of and assumed the existence of both an FTCA and a *Bivens* remedy for the violations at issue in this case. Only against this

backdrop should the Court consider whether the PLRA or PREA can properly be viewed as indicating Congressional intent to "limit prisoner litigation," as Defendant argues.

Indeed, when Congress enacted the PLRA, it was focused on imposing gatekeeping requirements to slow, but not stop, the stream of prisoner litigation. *Bistrian*, 912 F.3d at 93. It was not focused on the availability of damages remedies. *Id.* It is, accordingly, likely "that Congress simply wanted to reduce the volume of prisoner suits by imposing exhaustion requirements, rather [than] to eliminate whole categories of [*Bivens*] claims through silence and implication." *Id.* at n.22 (discussing *Abbasi,* 137 S. Ct. 1843). The Court in *Malesko,* a post-PLRA decision, indicated that, indeed, it was <u>not</u> Congress's intent to stamp out damages remedies for federal inmates, when it held that "a federal prisoner in a BOP facility alleg[ing] a constitutional deprivation ... may bring a *Bivens* claim against the offending individual officer." 534 U.S. at 72, 122 S.Ct. 515.

For these reasons, courts have declined to conclude that the PLRA suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment. *See, e.g., Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020)("We again reject the argument that Congressional silence within the PLRA suggests that Congress did not want a damages remedy against prison officials for constitutional violations. This argument is untenable, as it would arguably foreclose all *Bivens* claims brought in the prison context, which would run counter to the Supreme Court's ruling in *Carlson* and our recent ruling in *Bistrian II* regarding the inmate's Fifth Amendment duty-to-protect claim."); *Jerra v. United States*, 2018 WL 1605563 (C.D. Cal March 29, 2018)(finding neither BOP administrative remedies, potential for injunctive relief, potential claim under the Federal Tort Claims Act, nor state tort law preclude prisoner's Eighth Amendment excessive force or First Amendment retaliation claim); *Turkmen v. Ashcroft*, No.

02CV2307DLISMG, 2018 WL 4026734, at *8 (E.D.N.Y. Aug. 13, 2018)(declining "to infer what views Congress may have with respect to extending *Bivens* from its failure to pass a law that either provides or precludes a *Bivens*-type remedy for violations of constitutional rights"); *McLean v. Gutierrez*, 2017 WL 6887309 (C.D. Cal August 28, 2017) (prisoner's Eighth Amendment excessive force claim allowed to proceed because, *inter alia*, PLRA dealt with high-level policies and claim was "simple question of whether federal official applied excessive force ...."); *Lineberry v. Johnson*, 2018 WL 4232907 (S.D. W.Va. August 10, 2018)(even if prisoner's Eighth Amendment excessive force claim under *Bivens* is a "new context," no alternative remedies or special factors counseled hesitation to expanding *Bivens*—given that the BOP's administrative remedy would provide no relief, the FTCA has been construed as a remedy parallel to Bivens, an injunction would not remedy past conduct, the PLRA merely intended to reduce the quantity but improve the quality of prisoner litigation, and the allowance of an excessive force claim under *Bivens* would not overly burden federal courts); *Moneyham v. United States*, 2018 WL 3814586 (C.D. Cal. May 31, 2018)("the Court cannot conclude the PLRA suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.").

This Court should similarly find that neither the PLRA nor PREA were intended by Congress to foreclose *Bivens*; to the contrary, they presumed *Bivens* to be an available remedy when they were enacted. Accordingly, this is not a special factor counseling hesitance in extending *Bivens*.

          *iii.*      *The Acts and Omissions of a Warden Do Not Implicate Separation of Powers.*

Defendant speciously argues that Mr. Longworth's claims against Defendant Mansukhani for failures to protect him from sexual assault by Defendant Beck have separation of powers implications. Unlike the cases cited by Defendant, where adoption and execution of prison policy

is at issue, Mr. Longworth's claims relate to misconduct specific and singular to his situation – the permission of ongoing sexual abuse by Defendant Beck by Defendant Mansukhani, personally and due to his failures to train and supervise his lower-level employees.

Indeed, where, as here, "plaintiff challenges a single instance of misconduct rather than any high level policies," no special factor exists to counsel against *Bivens* claim. *McLean*, 2017 WL 6887309, at *19. There is no reasonable argument that this implicates executive branch decision-making, and Defendant cites cases that are plainly inapposite to this one.

> iv. The *Farmer* Standard Is the Clear Standard for this *Bivens* Action

Defendant puzzlingly posits that there is no "workable standard," for this case. In support of this contention, they cite to cases that involve legal standards long-noted to be difficult, such as the probable cause standard. *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017)( "the inherent uncertainty surrounding the probable cause standard is itself a factor counseling hesitation."). This case, however, involves a very different standard – deliberate indifference – which was set forth in detail in *Farmer v. Brennan*. 511 U.S. at 832. This standard is not the subject of genuine debate, and it is a plainly workable standard that governs this case.

> v. These Claims Do Not Put Government Operations At Risk.

Defendant's recognition that the "Supreme Court has long acknowledged the significant impact of *Bivens* actions on government operations," reveals that this is not a **special** factor in this case. Rather, that admission emphasizes that Mr. Longworth's claim will impact government operations to the same extent any other *Bivens* claim would. Defendant makes no argument as to why these claims against him, specifically, based on these facts would affect government operations.

Defendant's special factor analysis appears to be cookie-cutter, as the arguments advanced for each of these factors are not tailored to Mr. Longworth's claims. A special factor is exactly that – special. It must be particular to the given case. For the reasons stated above, Defendant has not identified a single special factor that genuinely or uniquely counsels against permitting Mr. Longworth's *Bivens* claims.

## II. Plaintiff Has Sufficiently Articulated Facts That Give Rise To Claims For Deliberate Indifference Against Defendant Mansukhani.

Mr. Longworth has asserted plausible and cognizable claims against Defendant Mansukhani for personally failing to protect Mr. Longworth, failure to properly supervise Defendant Beck and failures to train regarding sexual assault and reporting sexual assault in the prison. At the Motion to Dismiss stage, Plaintiff need only assert facts which, taken as true and viewed in the light most favorable to plaintiff, state a claim for deliberate indifference. *Bowens v. Cannon*, 175 F. App'x 635, 636 (4th Cir. 2006)(finding plaintiff had alleged facts, taken as true, sufficient to state a claim of deliberate indifference to his serious medical needs).

### A. Mr. Longworth was Incarcerated Under Conditions that Posed a Substantial Risk to his Safety.

The Supreme Court in *Farmer* set forth the two-pronged test for whether a prison official is deliberately indifferent to an inmate's safety. 511 U.S. at 832. The first prong requires that the Defendant demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Contrary to Defendant's apparent position, there need not have been known misconduct by Defendant Beck prior to her first assault on Mr. Longworth. The early conduct against Mr. Longworth provided Defendant Mansukhani with knowledge of the substantial and ongoing risk to his safety. Indeed, Defendant Beck's conduct went on for months, but Defendant Mansukhani repeatedly failed to take action. (Am. Compl. ¶¶ 26-32.) Such ongoing risk, when known and ignored by prison employees, creates liability under *Bivens*. *Starr v. Baca*, 652 F.3d

16

1202 (9th Cir. 2011)(finding sufficient for a failure-to-protect claim under *Bivens* allegations of ongoing unconstitutional conduct by coworkers).

Moreover, it is unclear whether Defendant disputes that Mr. Longworth's exposure to the ongoing sexual abuse of Defendant Beck constituted a substantial risk of harm. Basic human decency and relevant legal precedent, however, make evident that the risk of repeated sexual assault constitutes a substantial risk of harm. *See, e.g., Johnson v. Johnson*, 385 F.3d 503, 527 (5th Cir. 2004)(prison guards who did nothing in the face of ongoing sexual assault of inmate were deliberately indifferent to the substantial risk that inmate faced); *Riley v. Olk-Long*, 282 F.3d 592, 595 (8th Cir. 2002)(concluding that the "jury had sufficient evidence upon which to base its finding that [defendants] were deliberately indifferent to the risk that [prison guard] would assault a female inmate," and there was no dispute that such risk was substantial); *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 109 (4th Cir. 2017)(a prison official could be liable for failing to protect a female inmate from subsequent sexual assault if he were aware of a prior incident).

Accordingly, the first prong of the *Farmer* analysis – whether there was a substantial risk to Mr. Longworth – has been satisfied.

### B. Defendant Mansukhani is Liable Under *Bivens* for his Personal Failure to Protect Mr. Longworth from a Known, Substantial Risk to His Safety.

The second prong of *Farmer* requires that the prison official acted with a "sufficiently culpable state of mind," meaning that the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. A prison official displays deliberate indifference when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and then "draw[s] the inference." *Id.* Plaintiff is not required, however, to show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see id.* at 842. Nor may a prison official stick his head in the sand to avoid liability:

"willfully or intentionally contrived obliviousness" to an obvious risk also violates the Eighth Amendment. *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 106 (4th Cir. 1995); *see Farmer*, 511 U.S. at 843 n.8.

According the Amended Complaint, Defendant Mansukhani had actual knowledge of the substantial risk to Mr. Longworth, including detailed factual allegations and the reasonable inferences therefrom.[3]  Indeed, these allegations make clear that Defendant was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],' and [he] in fact drew such an inference but disregarded it." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770–71 (4th Cir. 2003)(quoting *Farmer,* 511 U.S. at 837).

> i. *Defendant Has Misstated the Standard Regarding Factual Allegations, and the Court Can Consider All Factual Detail Contained in the Amended Complaint.*

Defendant asserts throughout his brief, without citation to a single authority, that this Court cannot consider factual allegations that he characterizes as "conclusions." (Dkt. No. 46 at 19.) Defendant appears to be trying to draw a distinction between objective facts and subjective facts, arguing that subjective facts alleged in the Amended Complaint should not be considered by the Court. Not only is there no apparent legal basis for that proposition – indeed, Defendant cites none – but there is also no logical basis for that proposition.  Whether a factual allegation is relative, subjective or otherwise open to interpretation has no impact at the pleading stage; the Court is

---

[3] Plaintiff notes that the majority of Defendant's citations are to cases involving the summary judgment standard and considered after the close of discovery. While those cases may be instructive, their disposition is largely inapposite here, at the motion to dismiss stage, particularly where they rely on evidentiary weight.  *See, e.g., McMichael v. Pate*, No. CA 8:13-263-TMC, 2014 WL 793070, at *11 (D.S.C. Feb. 24, 2014)("Notably, the Court decided *Fuller* at the summary judgment stage and not on a motion to dismiss, and it further found that deliberate indifference was not established because there were no records or testimonial evidence that 'ill will' existed between Plaintiff and his assailant prior to the attack")(citing *Fuller v. County of Charleston*, 444 F.Supp. 2d 494, which is relied on by Defendants (Dkt. No. 49 at 25)).

required to view all factual allegations in the light most favorable to the Plaintiff, meaning his subjective view of those facts, as long as it is reasonable, is the view the Court is required to take. *Oberg*, 745 F.3d at 136. Further, while it is true that the Court is not required to take as true legal conclusions, it must still take as true factual statements, even if they are summary in nature or Defendant disagrees with those facts. Moreover, as described *infra*, Plaintiff has pled specific and objective facts related to Defendant Mansukhani's knowledge and subsequent disregard of the serious risk to Mr. Longworth.

> ii. *The Amended Complaint Contains Sufficient and Appropriate Factual Detail that Defendant Mansukhani Knew Of and Disregarded the Substantial Risk to Mr. Longworth.*

Defendant Mansukhani was the warden of FCI Butner, responsible for the prison's administration and for overseeing the activities of all correctional officers and BOP employees in the facility. (Am. Compl. ¶ 8.) He was also aware of Defendant Beck's misconduct, but failed to protect Mr. Longworth from ongoing sexual abuse and harassment at the hands of Defendant Beck. (Am. Compl. ¶¶ 29, 59.) Mr. Longworth spent long periods of time unaccounted for, alone with Defendant Beck, a fact that Defendant Mansukhani knew. (Am. Compl. ¶ 29.) The inference from that fact alone could have caused him concern about the risk of substantial harm to Mr. Longworth. *See Whitson v. Stone County Jail,* 602 F.3d 920, 294–5 (8th Cir. 2010) (reasonable fact finder could determine that jailers placing two inmates of the opposite sex next to one another in an isolated rear cage of a dark transport van, inadequately supervised, amounts to deliberate indifference to the female inmate's safety, even though, the female inmate made no indication she was fearful of the male inmate prior to transportation). However, Mr. Longworth also specifically alleges that Defendant Mansukhani was aware of the ongoing sexual abuse and, accordingly, of the threat posed by Defendant Beck. (Am. Compl. ¶¶ 29, 59.)

"Prison officials may not simply bury their heads in the sand and thereby skirt liability. Rather, they may be held accountable when a risk is so obvious that it had to have been known." *Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015). Here, the sexual misconduct occurred in open spaces of the prison – the facilities office and the attic. Indeed, the allegations make clear that Defendant Mansukhani objectively should have been aware and subjectively was aware of such conduct. *Id.* ("Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious.")(citing *Brice v. Virginia Beach Corr. Ctr.,* 58 F.3d 101, 105 (4th Cir.1995)).

Despite knowing of this serious risk to Mr. Longworth, Defendant Mansukhani did nothing to stop the continuous, ongoing assaults. Such wholesale inaction in the face of such risk constitutes deliberate indifference. *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 771 (4th Cir. 2003)(holding that prison guards were deliberately indifferent to a known risk of harm when they "simply ignored it"). Thus, Mr. Longworth has satisfied the second prong of deliberate indifference – that Defendant Mansukhani knew of, but disregarded the substantial risk to Mr. Longworth. Accordingly, Mr. Longworth's Amended Complaint sufficiently sets forth claims for deliberate indifference against Defendant Mansukhani for failing to protect him against the known, substantial risk to his safety posed by Defendant Beck's ongoing sexual misconduct.

### C. Defendant Mansukhani is Liable Under *Bivens* for his Failure to Properly Supervise Defendant Beck.

Defendant Mansukhani attacks the failure to supervise claim primarily on the ground that there is no causal connection between the alleged supervision failures and Defendant Beck's assaults on Mr. Longworth. Defendant correctly focuses on this issue – the primary question for a *Bivens* supervisory liability claim is whether Defendant Mansukhani's failures to supervise proximately caused the violation of Mr. Longworth's rights. *See Spell v. McDaniel,* 591 F.Supp.

1090, 1109–10 (E.D.N.C.1984). Defendant's position, however, is both legally and logically flawed. Logically, common sense dictates that, had Defendant Beck been properly supervised, she would not have been able or willing to commit the sexually assaultive acts against Mr. Longworth. Legally, the question of whether Defendant Mansukhani's supervision failures proximately caused Mr. Longworth's injuries is a question of fact not properly determined at the pleading stage. As the Fourth Circuit has noted, in failure to supervise claims, the issue of proximate cause is one of fact, not law. *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994)(citing *Spell* and *Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir. 1981). Accordingly, the summary judgment cases to which Defendant cites are inapposite here, at the motion to dismiss stage.

Moreover, using Defendant's framework as set forth in *Shaw* (a summary judgment case), Plaintiff has pled facts that, along with the reasonable inferences therefrom, meet all three of the *Shaw* elements. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994)(supervisory liability is established where (1) the supervisor had actual or constructive knowledge of his subordinate's conduct, (2) the supervisor was deliberately indifferent to this knowledge, and (3) the supervisor's inaction caused the plaintiff's injury).

First, Mr. Longworth has pled that Defendant Mansukhani had <u>actual</u> knowledge of Defendant Beck's conduct. (Am. Compl. ¶¶ 72-73.) This is enough, at the pleading stage, to meet the first *Shaw* element. Moreover, Defendant Mansukhani had <u>constructive</u> knowledge of the need for supervision regarding sexual assault. It is well-known that sexual assaults in prisons, by both inmates and guards, is a widespread problem; this was the very reason Congress enacted PREA. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)("A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the substantial risk of [sexual assault] was longstanding, pervasive, well-documented, or expressly

noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it."). Discovery is needed to determine whether and to what extent this was a pervasive or well-documented problem at FCI Butner at the time Mr. Longworth was assaulted, as this information is exclusively within the custody and control of Defendants.

Second, Mr. Longworth has plainly stated that, despite knowledge of the risk, Defendant Mansukhani repeatedly failed to properly supervise Defendant Beck. As described in the Amended Complaint (¶¶ 65-76), Defendant Mansukhani is one of "the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked," as he was aware of the misconduct and did nothing to address it. *Slakan v. Porter,* 737 F.2d 368, 376 (4th Cir. 1984). Specifically, Mr. Longworth pleads that Defendant Mansukhani had exclusive control over the supervision of Defendant Beck, but failed to properly do so despite knowing of the need for better. (Am. Compl. ¶¶ 66-68, 72.) Indeed, Defendant Mansukhani did nothing to supervise Defendant Beck in the face of the known threat that she posed to Mr. Longworth. (Am. Compl. ¶¶ 29, 60.) To be clear, distinct from the plaintiff in *Danser v. Stansberry*, 772 F.3d 340 (4th Cir. 2014), upon which Defendant relies, Mr. Longworth complains that Defendant Mansukhani failed to take any action during the months of ongoing sexual abuse, including <u>before</u> the later incidents of assault. *See id*. at 350. The second element is, therefore, also satisfied. *See Farrell, ex rel. Farrell v. Transylvania Cty. Bd. of Educ.,* 199 N.C. App. 173, 182, 682 S.E.2d 224, 231 (2009)(supervisor defendant was deliberately indifferent where she did nothing despite knowledge of the threat).

Third, it is plain that, had Defendant Beck been properly supervised, Mr. Longworth's injury would not have occurred. (Am. Compl. ¶¶ 70, 74.) Indeed, "the requisite casual connection

can be established not only by direct personal participation, but also by failure to perform an act which is legally required or by 'setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Spell*, 591 F. Supp. at 1110 (citing *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978). Moreover, the issue of proximate cause is a question of fact. the supervisor's inaction caused the plaintiff's injury. *Shaw*, 13 F.3d at 798–99.

### D. Defendant Mansukhani is Liable Under *Bivens* for his Failures to Train Defendants Beck, Burrell and Haught.

It is well-settled that inadequate training can give rise to a claim of deliberate indifference. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Indeed, a "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the [defendant] itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). Plaintiff has pled acute failures by the Defendant Mansukhani in his training with respect to sexual assault in the prison and the reporting thereof by bystander employees. (Am. Compl. ¶¶ 65-76.)

Defendant erroneously argues that Plaintiff need have pled detailed evidence of a pattern or practice of prior constitutional violations to demonstrate that he had notice of the need for better training. Indeed, that is one way to plead notice of a need for better training; as discussed *supra*, however, that method requires information that is rarely accessible to a *Bivens* plaintiff. In the alternative, defendant may also be on notice where a deficiency is so glaring that it puts any reasonable person on notice of the need for better policies and training. *City of Canton,* 489 U.S. at 388. Indeed, "[d]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to

make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. County of Erie,* 654 F.3d 324, 334 (2d Cir. 2011).

Contrary to Defendant's assertions, however, Mr. Longworth does provide a detailed account of Defendant Mansukhani's training failures. He states that Defendant Mansukhani had exclusive control over the training of Defendants Beck, Burrell and Haught, had a duty to do so properly and effectively, but failed in that duty. (Am. Compl. ¶ 65.) He alleges, specifically, that Defendant Mansukhani failed to provide adequate training regarding sexual abuse and harassment of inmates, PREA, the rights of inmates under PREA, prohibitions on sexual activity with inmates and reporting obligations of BOP employees who suspect such improper activity. (Am. Compl. ¶ 66.) He further alleges that Defendant Mansukhani's "training policies, practices and customs were known to [him] to be inadequate, dangerous and manifestly likely to cause harm," as he was aware, prior to Mr. Longworth's incarceration, of the need for better training with respect to sexual abuse and sexual harassment of inmates, and the reporting of suspected abuses. (Am. Compl. ¶¶ 65, 72.)

Based on these allegations, Mr. Longworth has sufficiently pled that the training failures were deliberately indifferent. *See, e.g., Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1397–98 (11th Cir. 1994) ("Failure to train can amount to deliberate indifference ... when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures."); *Barrera v. Cty. of Bucks*, Civil Action No. 14-7136, 2015 WL 4474398, at *4 (E.D. Pa. July 22, 2015)(denying motion to dismiss *Monell* claim because the complaint "allege[d] specific facts concerning [the officer's] conduct within the prison system, pointing to the prison's history of sexual assault by guards, a systemic failure to report such assaults, deficiencies in the ethics and procedural training of guards, and oversight in the promotion and supervision of guards").

24

Finally, Mr. Longworth alleges that this lack of training was a cause of the ongoing sexual abuse and harassment by Defendant Beck, as well as the failures to report the abuse and harassment by Defendants Burrell and Haught, which permitted the misconduct to continue for an extended period of time. (Am. Compl. ¶¶ 70-71, 74.) Indeed, it is plain that better training could have foreseeably prevented the assaults on Mr. Longworth and their ongoing nature. Plaintiff pled, specifically, that Defendant Mansukhani knew the training policies, practices and customs to be inadequate, dangerous and manifestly likely to cause harm. (Am. Compl. ¶ 68.) Moreover, as with the supervision claim, the issue of proximate cause is a question of fact. *Shaw*, 13 F.3d at 798–99.

## III. Qualified Immunity

Defendant's final argument is that he is entitled to qualified immunity for his conduct. The doctrine of qualified immunity shields public officials from liability only when "their conduct does not breach 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorrell v. McGuigan*, 38 F. App'x 970, 972 (4th Cir. 2002)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity thus will not apply if: "(1) the officers' conduct violates a federal statutory of constitutional right, and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right." *Knussman v. Maryland*, 272 F.3d 625, 633 (4th Cir. 2001). At the pleading stage, a court must analyze qualified immunity in the light most favorable to the plaintiff, taking the allegations contained in the complaint, and the reasonable inferences therefrom, as true:

> The procedural framework for evaluating a claim of qualified immunity is clear: when the defendant in a § 1983 action raises a qualified immunity defense, the court ordinarily assesses whether the plaintiff's complaint states sufficient factual allegations that, if true, show a violation of clearly established constitutional rights. To do so, the plaintiff's complaint must allege conduct a reasonable officer would know to be unlawful.

*Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009).

Defendant only argues that he is entitled to qualified immunity because he did not violate Mr. Longworth's constitutional rights. To the contrary, and as described *supra*, Defendant Mansukhani violated Mr. Longworth's constitutional right to be free from cruel and unusual punishment through his failures to protect Mr. Longworth from the known, substantial risk of sexual assault by Defendant Beck, namely his personal failures to intervene and his failures to supervise and train his subordinate employees.

Notably, Defendant Mansukhani does not dispute that such a right was clearly established or that a reasonable officer would have known his actions violated such right. Indeed, the right was clearly established at the time of Defendant Mansukhani's failures. It has long been clear that prison officials have a duty to protect inmates from risks to their safety, including sexual assaults. *Rish v. Johnson*, 131 F.3d 1092, 1096–97 (4th Cir. 1997)(stating that in 1992, "it was clear that as a component of their duty to provide inmates with humane conditions of confinement, prison officials were required to 'take reasonable measures to guarantee the safety of the inmates'")(citing *Farmer,* 511 U.S. at 832). Finally, an objectively reasonable officer would have understood that the conduct violated Mr. Longworth's rights. *Johnson*, 385 F.3d at 527 (prison guards who did nothing in the face of ongoing sexual assault of inmate were not entitled to qualified immunity).

## CONCLUSION

Defendant Mansukhani, knowing of Defendant Beck's ongoing sexual misconduct, did nothing to protect him from such conduct. Knowing of the training and supervision failures present at the prison, and the manifest risk posed by these deficiencies, he was deliberately indifferent to such risk. The result was the repeated sexual assault of Mr. Longworth by Defendant Beck. The allegations in the Amended Complaint give rise to valid and cognizable claims against Defendant

Mansukhani *Bivens* for failure to protect, which does not present a new *Bivens* context. For all these reasons, Plaintiff respectfully submits that the Motion to Dismiss (Dkt. No. 48) should be DENIED.

This the 25th day of September, 2020.

/s/ Catharine E. Edwards
N.C. State Bar No.: 52705
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone:  (919) 780-5400
Facsimile:   (919) 800-3099
E-mail: cedwards@edwardskirby.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, I electronically filed on behalf of the Plaintiff the foregoing Plaintiff's Opposition to Defendant Mansukhani's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons:

> Trawick H. Stubbs, Jr.
> Stubbs & Perdue, P.A.
> 9208 Falls of Neuse Road, Suite 201
> Raleigh, NC 27615
> (919) 870-6258
> (919) 870-6259 (fax)
> tstubbs@stubbsperdue.com

> *Attorney for Defendant Sherry Beck*

> Sharon C. Wilson
> United State Attorney's Office- EDNC
> 150 Fayetteville Street, Suite 2100
> Raleigh, NC 27601
> (919) 856-4026
> (919) 856-4821 (fax)
> Sharon.wilson2@usdoj.gov

> *Attorney for Defendants Mansukhani, Burrell, Haught and Scarantino*

This the 25th day of September, 2020.

/s/ Catharine E. Edwards
Catharine E. Edwards
N.C. State Bar No.: 52705
Edwards Kirby, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, NC 27612
Telephone: (919) 780-5400
Facsimile: (919) 800-3099
E-Mail: cedwards@edwardskirby.com