IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3199-FL

| | | |
|---|---|---|
| JUSTIN M. LONGWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| A. MANSUKHANI, SHERRY M. BECK, ANTHONY T. SCARANTINO, PATRICK BURRELL, and MATTHEW W. HAUGHT, | ) ) ) ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on motions to dismiss by defendants A. Mansukhani, Anthony T. Scarantino, Patrick Burrell, and Matthew W. Haught (together, "moving defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 45, 48, 50). Also pending are plaintiff's motion for entry of default as to defendant Sherry M. Beck (DE 59) and defendant Beck's pro se motion to file materials under seal and ex parte (DE 69). The motions to dismiss were briefed fully and defendant Beck did not respond to the motion for entry of default. In this posture, the issues raised are ripe for ruling.

### STATEMENT OF THE CASE

Plaintiff, a federal inmate, commenced this action on July 2, 2019, asserting claims for violations of his civil rights pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and related state law claims. Following an initial period of

---

[1] The court dismissed formerly named defendant Federal Bureau of Prisons by separate order entered February 25, 2020.

frivolity review, the operative amended complaint was filed on June 1, 2020, asserting claims under the Eighth Amendment to the United States Constitution against all defendants, and the following North Carolina tort claims against defendant Beck: false imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

In particular, plaintiff asserts that defendant Beck sexually assaulted him while he was incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"), the moving defendants failed to protect him from harm, and defendants Mansukhani and Scarantino failed to adequately supervise or train defendants regarding sexual assault. Defendants, sued in their individual capacities only, are Sherry M. Beck ("Beck"), former secretary of the facilities department at FCI-Butner; Andrew Mansukhani ("Mansukhani"), the warden of FCI-Butner Medium; Anthony T. Scarantino ("Scarantino"), a correctional institution administrator at FCI-Butner; Patrick Burrell ("Burrell"), a plumber for the FCI-Butner facilities department; and Matthew W. Haught ("Haught"), a maintenance mechanic for the facilities department. As relief, plaintiff seeks compensatory and punitive damages.

Defendant Mansukhani filed the instant motion to dismiss, arguing that plaintiff's Eighth Amendment claims are not cognizable causes of action under <u>Bivens</u>, and that plaintiff failed to plead sufficient facts to state plausible claims for relief. Defendants Burrell and Haught filed the instant motion to dismiss raising the same arguments as defendant Mansukhani. Defendant Scarantino filed the instant motion to dismiss, relying upon his personal declaration and declaration of his brother, Thomas Scarantino, the complex warden for FCI-Butner. Defendant Scarantino argues the Eighth Amendment claims against him should be dismissed for same reasons

as the other moving defendants, and where he was not the warden of FCI-Butner during the time period alleged in the complaint.

Defendant Beck did not respond to plaintiff's complaint within the deadline set by the court's previous orders extending her deadline to file answer or other responsive pleading. Plaintiff filed the instant motion for entry of default, and defendant Beck did not respond to plaintiff's motion. However, on February 22, 2021, defendant Beck filed notice of self-representation and pro se answer to the amended complaint. On August 16, 2021, defendant Beck filed the instant motion to file materials under seal and ex parte.

## STATEMENT OF THE FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Plaintiff entered Federal Bureau of Prisons ("FBOP") custody on or about May 10, 2016, at the Federal Correctional Institution in Sheridan, Oregon. (Am. Compl. (DE 28) ¶¶ 20–21). During his intake interview, plaintiff disclosed that he was sexually abused as a child, which FBOP officials documented in his file. (Id. ¶ 22). In addition to this history of sexual abuse, plaintiff suffers from bi-polar disorder, post-traumatic stress disorder, and borderline personality disorder. (Id. ¶ 23). He has a history of multiple suicide attempts and takes psychotropic medications for the foregoing conditions. (Id.).

On July 22, 2016, FBOP officials transferred plaintiff to FCI-Butner. (Id. ¶ 24). On February 17, 2017, plaintiff began his work assignment as a plumber for the facilities department. (Id. ¶ 25). He received multiple positive evaluations from his supervisors throughout his time at this assignment. (Id. ¶ 25). Defendant Burrell was a plumber for the facilities department, and plaintiff's direct supervisor. (Id. ¶ 10). Defendant Haught was a maintenance mechanic who

3

worked closely alongside plaintiff and defendants Burrell and Beck. (Id. ¶ 11). At the time of the alleged abuse, defendant Mansukhani was the FCI-Butner warden, and defendant Scarantino was a correctional administrator. (Id. ¶¶ 8–9).[2]

Defendant Beck, the FCI-Butner secretary of facilities, was in charge of managing payroll of all inmate employees when plaintiff was employed as a plumber. (Id. ¶ 26). She allegedly developed an inappropriate interest in plaintiff during this time, which advanced to "daily aggressive sexual harassment and sexual abuse." (Id. ¶ 27). According to the complaint, plaintiff initially, and repeatedly, rejected her advances but ultimately was unsuccessful in his attempts to abate her conduct. (Id.). The sexual abuse allegedly progressed to forced oral sex, groping of the genitals, kissing, and biting. (Id. ¶ 28). Defendant Beck also allegedly forced plaintiff to perform these same acts on her. (Id.).

According to the complaint, the abuse occurred in both the main offices of the facilities department and the "attic" where defendant Beck allegedly would lure plaintiff by pretending to need assistance with work-related tasks. (Id. ¶ 29). Although defendant Beck allegedly spent an unusual amount of time alone with plaintiff, defendants Mansukhani, Scarantino, Burrell, and Haught did nothing to intervene or otherwise stop or report the abuse. (Id. ¶ 29).

Plaintiff did not initially report the abuse. (Id. ¶ 30). Defendant Beck allegedly "ensured [plaintiff's] silence through continuous manipulation, coercion and bribery." (Id.). At one point, defendant Beck asked plaintiff to tattoo her initials and retirement date on his body in exchange

---

[2] Defendant Scarantino disputes that he was a correctional administrator or a warden (as plaintiff alternatively describes him in the complaint) during the relevant time period. (Scarantino Decl. (DE 50-2)). Instead, he was a housing unit administrator. (Id.). This factual dispute is not capable of resolution at the motion to dismiss stage, and in any event it is irrelevant to resolution of the instant motions.

for her removing her wedding ring. (Id.). Although tattooing is prohibited by FBOP policy, plaintiff complied with this request out of fear of reprisal by defendant Beck. (Id.).

On an unidentified date "long after the abuse had started," defendant Haught reported defendant Beck's conduct to her facilities supervisors.[3] (Id. ¶ 32). Defendant Haught, however, did not report the misconduct to his personal superiors, a special investigative agent, defendant Mansukhani, or defendant Scarantino as required by FBOP policy. (Id. ¶ 32).

On September 26, 2018, plaintiff was fired from his work assignment in the facilities department. (Id. ¶ 33). At the direction of defendants Mansukhani and Scarantino, plaintiff was transferred to the special housing unit, also known as administrative segregation. (Id. ¶ 33). Defendants Mansukhani and Scarantino did not discipline defendant Beck or provide plaintiff with counseling as required under the Prison Rape Elimination Act ("PREA"). (Id. ¶ 34).

On September 28, 2018, plaintiff reported defendant Beck's conduct to an FBOP special investigative agent. (Id. ¶ 36). Several days later, defendant Beck was terminated from her FBOP employment. (Id. ¶ 37). However, to plaintiff's knowledge, no further legal, criminal, or disciplinary action has been taken against defendant Beck. (Id.).

On January 16, 2019, FBOP officials transferred plaintiff to the Federal Correctional Institution in Petersburg, Virginia. (Id. ¶ 38). The transfer order provides that on September 28, 2018, plaintiff "incurred an incident rereport, which resulted in an OIG investigation. The investigation has been concluded and it has been determined the [plaintiff] can no longer be housed on the Butner Complex." (Id.).

---

[3] The amended complaint does not specify whether defendant Haught reported the sexual abuse itself, or whether he reported that defendant Beck was spending an inappropriate amount time alone with plaintiff.

Following plaintiff's transfer and defendant Beck's termination, she allegedly continued to harass and intimidate plaintiff by sending him sexually explicit and threatening correspondence. (Id. ¶ 39). According to plaintiff, "[t]he abuse was permitted to continue, and effectively sanctioned, by the deliberate indifference defendants Mansukhani, Scarantino, Burrell, and Haught demonstrated to [plaintiff's] rights. . . . [T]hese defendants knew of defendant Beck's conduct, but failed to report or properly supervise defendant Beck." (Id. ¶ 41). The abuse allegedly caused plaintiff serious emotional distress and trauma. (Id. ¶ 42).

## COURT'S DISCUSSION

A.  Motion for Entry of Default

Plaintiff seeks entry of default based on defendant Beck's failure to answer or otherwise respond to plaintiff's complaint in a timely manner. Federal Rule of Civil Procedure 55(a) provides that entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court may set aside entry of default upon a showing of good cause. See Fed. R. Civ. P. 55(c).

When deciding whether to set aside default, a court should consider factors such as whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the adverse party, whether there is a history of dilatory action, and the availability of sanctions less drastic than entry of default. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 205 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."

6

Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

Here, where defendant Beck responded to the complaint when the motions to dismiss were pending, where she has a meritorious defense as discussed below, and where plaintiff would not be prejudiced by settings aside default (had one been entered), the motion for entry of default is denied.

B.    Motion to Dismiss

1.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2.    Analysis

Moving defendants argue that plaintiff's constitutional claims are not cognizable under Bivens in light of recent Supreme Court law. See, e.g., Ziglar v. Abbasi, 137 S. Ct. 1843, 1856–57 (2017). In Bivens, the Supreme Court recognized a damages remedy against federal officers for Fourth Amendment violations where the officers searched a residence and arrested the plaintiff

without a warrant or probable cause. 403 U.S. 388, 397 (1971). Since Bivens was decided in 1971, the Supreme Court has authorized a damages remedy against federal officers for constitutional violations in only two additional contexts: 1) a Fifth Amendment equal protection claim alleging gender discrimination in congressional employment, see Davis v. Passman, 442 U.S. 228 (1979); and 2) an Eighth Amendment claim by a federal prisoner alleging prison officials were deliberately indifferent to his serious medical needs by failing to treat his asthma, see Carlson v. Green, 446 U.S. 14 (1980). See also Earle v. Shreves, 990 F.3d 774, 778 (4th Cir. 2021). The Court, however, "has declined to countenance Bivens actions in any additional context." See Tun-Cos v. Perrotte, 922 F.3d 514, 521 (4th Cir. 2019) (collecting cases).

The Supreme Court recently explained that Congress is better positioned to extend Bivens liability to new contexts not previously recognized by the Court, and instructed federal district and appellate courts to conduct a rigorous analysis before authorizing a Bivens remedy in any new context without congressional approval. See Abbasi, 137 S. Ct. at 1856–57; see also Tun-Cos, 922 F.3d at 521–23. The Court established the following framework for analyzing the availability of a Bivens remedy:

> First, courts must inquire whether a given case presents a "new Bivens context." If the context is not new . . . then a Bivens remedy continues to be available. "But if the context is new, then courts must, before extending Bivens liability, evaluate whether there are special factors counselling hesitation in the absence of affirmative action by Congress. If any such special factors do exist, a Bivens action is not available."

Earle, 990 F.3d at 778–79 (quoting Tun-Cos, 922 F.3d at 522–23).

The first step of this inquiry asks whether the case presents a "new context" for Bivens liability because it is "different in [any] meaningful way" from the three prior cases in which the Court has provided a Bivens remedy. Abbasi, 137 S. Ct. at 1859; Tun-Cos, 922 F.3d at 522-23.

8

"A radical difference is not required." See Tun-Cos, 922 F.3d at 523. The Court, "without endeavoring to create an exhaustive list," noted that a case might differ in a meaningful way based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Abbasi, 137 S. Ct. at 1859–60.

Here, plaintiff alleges defendant Beck sexually assaulted him in violation of Fourth and Eighth Amendments, and that the remaining defendants either failed to protect him from a risk of harm or failed to supervise/train the officers responsible for the abuse, in violation of the Eighth Amendment.[4] The court begins with the Eighth Amendment claims. These claims present new contexts where they have "no analogue in the Supreme Court's prior Bivens cases." See Tun-Cos, 922 F.3d at 525. As set forth above, the Supreme Court has recognized only one Bivens claim grounded in the Eighth Amendment: for deliberate indifference to serious medical needs.[5] Carlson, 446 U.S. at 16–23 & n.1. Plaintiff's allegations of sexual assault and failure to protect from risk that a correctional officer would sexually assault an inmate "bear little resemblance to" the medical claim at issue in Carlson. See Abbasi, 137 S. Ct. at 1860; see also id. at 1864 ("[A] modest extension is still an extension."); Hunt v. Matevousian, 336 F. Supp. 3d 1159, 1170 (E.D.

---

[4] Although defendant Beck does not move to dismiss, the court sua sponte addresses the constitutional claims asserted against her pursuant to 28 U.S.C. § 1915(e)(2)(B).

[5] Importantly, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020).

9

Cal. 2018) (declining to extend Bivens to claim that three officers assaulted plaintiff and a fourth officer failed to stop the assault). The factual context here involves intentional sexual abuse by an FBOP employee and failure to report same, which is wholly different than the medical indifference claim in Carlson.

In addition, although governed by a similar legal standard, the claims in this case implicate statutory and FBOP policy provisions governing inmate allegations of sexual assault that were not at issue in Carlson. (See Am. Compl. (DE 28) ¶¶ 15–19 (discussing requirements of the Prison Rape Elimination Act as applied to the FBOP)). The FBOP also is better situated than the court to create standards governing employee responsibilities and procedures when sexual abuse by another FBOP employee is suspected. See Abbasi, 137 S. Ct. at 1860 (explaining court should consider "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" when determining if the claim presents a new context). Moreover, the allegations against moving defendants related to failure to supervise or provide adequate training involve policy and supervisory decisions that differ from the medical treatment claims at issue in Carlson. See id. at 1864 (concluding plaintiff's claims were meaningfully different than Carlson on similar grounds).[6]

Plaintiff argues that the Supreme Court recognized a failure to protect claim by implication in Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer, the Court addressed the merits of an Eighth Amendment failure to protect claim asserted against federal officials, thereby suggesting a Bivens remedy is available for such claims. 511 U.S. at 828. However, the parties in that case did not argue, and Court therefore did not address, whether the claim was a cognizable cause of

---

[6] Plaintiff's overarching contention that Carlson and Abbasi establish a Bivens claim for all Eighth Amendment violations grounded in alleged "prisoner mistreatment," no matter how distinct from the medical claim at issue in Carlson, is inconsistent with Abbasi itself. See 137 S. Ct. at 1864–65.

action under Bivens. See id. at 582 ("We granted certiorari because the Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'"). Although not made explicit, the Court appeared to assume without deciding that a Bivens remedy was available in order to reach the questioned presented by the parties. See id.; see also Iqbal, 556 U.S. at 675 (assuming without deciding that plaintiff's First Amendment Bivens claims were cognizable where the parties did not raise the issue).[7] By contrast, the cases identified in Abbasi, and reaffirmed in Hernandez, as representing the "only" recognized Bivens contexts specifically analyzed whether a Bivens remedy was available for those claims. See Carlson, 446 U.S. at 16–23 & n.1; Davis, 442 U.S. at 244–48; Bivens, 403 U.S. at 395–96. Farmer simply does not address whether an Eighth Amendment failure to protect claim is cognizable under Bivens, and the court is not permitted to graft onto the Supreme Court's silence a presumption that it recognized a new cause of action. See Abbasi, 137 S. Ct. at 1855 (explaining Davis, Carlson, and Bivens "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself").

Furthermore, even if Farmer did recognize a new Bivens context, this case is meaningfully different than Farmer. In Farmer, the plaintiff alleged that FBOP corrections officers failed to protect her from a known risk of harm by housing her in a violent environment, where she was raped and beaten, despite her particular susceptibilities to abuse. 511 U.S. at 829–31. Plaintiff here alleges FBOP officials failed to protect him from an assault by another FBOP employee, not other inmates. Plaintiff also does not allege that defendant Beck presented a known risk of harm at the time he was assigned to the facilities department. In addition, allegations of sexual assault

---

[7] The availability of a Bivens remedy does not implicate the court's subject matter jurisdiction, and thus the court may assume without deciding that the remedy exists in order to reach issues raised by the parties. See Earle, 990 F.3d at 778; Hicks v. Ferreyra, 965 F.3d 302, 310 (4th Cir. 2020).

11

by another correctional officer raise significant concerns about correctional administration and security issues that are meaningfully different than standard failure to protect claims alleging abuse by other inmates, exemplified in Farmer. Accordingly, plaintiff's Eighth Amendment claims present new contexts, notwithstanding Farmer. See Abbasi, 137 S. Ct. at 1859–60 (discussing meaningful difference standard); Tun-Cos, 922 F.3d at 523 (noting "a radical difference is not required").

Finally, plaintiff brings a claim under the Fourth Amendment against defendant Beck for violating his "right to be free from illegal and unreasonable seizures by use of force." (Am. Comp. (DE 28) ¶ 47). This claim is wholly distinct from Bivens, which involved federal law enforcement officials conducting a warrantless search and using excessive force. Bivens, 403 U.S. at 389. Unlike Bivens, the claim here involves correctional officers and allegations of sexual assault in a prison. See Abbasi, 137 S. Ct. at 1859–60 (explaining court should consider differences between the officers involved and the context in which the claim arose to determine whether the case is meaningfully different than one of the Court's prior Bivens cases); Tun-Cos, 922 F.3d at 523 (concluding plaintiff's claim was meaningfully different than Bivens "because it concerns ICE agents' enforcement of the [Immigration and Nationality Act], rather than traditional law enforcement officer's enforcement of the criminal law").

Because this case involves new Bivens contexts, the court proceeds to the second inquiry: whether "special factors" counsel hesitation in expanding Bivens to this new context. Abbasi, 137 S. Ct. at 1857 (quoting Carlson, 446 U.S. at 18); Tun-Cos, 922 F.3d at 523. This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

12

Abbasi, 137 S. Ct. at 1857-58. A special factor counselling hesitation "must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. Extending Bivens to a new context is a "disfavored judicial activity" where Congress is better suited to determine whether a new damages remedy should be authorized. Id. at 1857. Thus, "[i]f any such special factors do exist, a Bivens action is not available." Tun-Cos, 922 F.3d at 523; see also Earle, 990 F.3d at 779.

The Supreme Court has emphasized two special factors that counsel hesitation in extending Bivens to a new context: 1) whether an "alternative remedial structure is present" and 2) whether extending Bivens would violate separation-of-powers principles. Abbasi, 137 S. Ct. at 1857–58; see also Tun-Cos, 922 F.3d at 525–27. Additional relevant special factors include, inter alia, 1) "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies"; 2) whether Congress previously has enacted legislation in the area, "making it less likely that Congress would want the judiciary to interfere"; 3) whether a damages remedy is necessary to deter future similar violations; 4) whether the claim addresses broader policy questions delegated to an administrative agency; and 5) whether national security interests are at issue. Abbasi, 137 S. Ct. at 1856–63 (citing Wilkie v. Robbins, 551 U.S. 537, 561–62 (2007); Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 73–74 (2001); FDIC v. Meyer, 510 U.S. 471, 485–86 (1994); United States v. Stanley, 483 U.S. 669, 679 (1987); Chappell v. Wallace, 462 U.S. 296, 302 (1983); and Bush v. Lucas, 462 U.S. 367, 385–88 (1983)).

13

Here, plaintiff has an alternative remedial program available to him in the form of the FBOP's administrative remedy program. Earle, 990 F.3d at 780. Plaintiff can obtain meaningful relief from the program, including changes to FBOP policies or procedures regarding prisoner sexual abuse claims. See id. (citing 28 C.F.R. § 542.10(a)). The fact that a damages remedy is not available through the administrative remedy program does not change this analysis. Tun-Cos, 922 F.3d at 526-27 ("The plaintiffs are correct that the protections provided by the INA do not include a money damages remedy and often do not redress constitutional violations that occur apart from removal proceedings. But this misses the point, for the relevant question is not what remedy the court should provide for a wrong that would otherwise go unredressed but instead whether an elaborate remedial system should be augmented by the creation of a new judicial remedy." (internal quotation marks and alteration omitted)). Plaintiff also may assert state law tort claims against defendant Beck.[8] The existence of the foregoing alternative remedies is a special factor counselling hesitation. Id.; see also Malesko, 534 U.S. at 72–73 (recognizing tort law can provide alternative relief).

Another special factor counselling hesitation is that Congress has enacted legislation in this context without creating a damages remedy. The Prison Rape Elimination Act, 34 U.S.C. § 30302 et seq., requires the FBOP to develop specific reporting and investigatory procedures in the event of prisoner sexual abuse. See, e.g., 28 C.F.R. § 115.11 et seq. However, as plaintiff acknowledges, Congress chose not to permit a damages remedy when it enacted the PREA in 2003. (Am. Compl. (DE 28) ¶ 19); see also De'lonta v. Clarke, No. 7:11-CV-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (collecting cases), appeal dismissed, 502 F. App'x 265 (4th Cir.

---

[8] In addition, plaintiff is pursuing an FTCA claim against the United States based on the allegations set forth above. See Longworth v. United States, No. 5:21-CT-3242-FL (E.D.N.C. Aug. 16, 2021).

2012). And where Congress is presumed to "legislate[] against the backdrop of existing law" disfavoring extension of Bivens, the fact that Congress did not enact a damages remedy in the PREA is a special factor counseling hesitation. See Parker Drilling Mgmt. Servs. v. Newton, 139 S. Ct. 1881, 1890 (2019); Abbasi, 137 S. Ct. at 1865 (noting that congressional decision not to include a damages remedy against federal officers when enacting the Prison Litigation Reform Act may be a special factor counseling hesitation); see also Cantu v. Moody, 933 F.3d 414, 423 (5th Cir. 2019) (explaining Congress has "long been on notice that the Supreme Court is disinclined to extend Bivens to new contexts." (citing Abbasi, 137 S. Ct. at 1857)).

The court next turns to whether separation of powers principles counsel against extending a Bivens remedy to plaintiff's claims. As discussed above, plaintiff's claims against the moving defendants, particularly the claims against defendants Mansukhani and Scarantino, implicate policy-level decisions about reporting requirements and protection of inmate abuse by FBOP employees. Plaintiff, for example, alleges that defendants Mansukhani and Scarantino "failed to provide adequate training regarding sexual abuse and sexual harassment of inmates[,] [the] PREA, . . . the rights of inmates, prohibitions on sexual activity with inmates[,] and reporting obligations of [FBOP] employees who suspect such improper activity." (Am. Compl. (DE 28) ¶ 67).

In the context of new constitutional claims filed by federal prisoners challenging prison policies, the Judiciary is ill suited, "absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Abbasi, 137 S. Ct. at 1857–58. Separation-of-powers principles thus counsel strongly against recognizing a new Bivens remedy for the claims against moving defendants. See Wetzel v. Edwards, 635 F.2d 283,

288 (4th Cir. 1980) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere."); see also Bistrian v. Levi, 912 F.3d 79, 94–96 (3d Cir. 2018) (providing similar special factors analysis in context of challenge to administrative detention and retaliation claims and noting that decisions "to place an inmate in more restrictive detention involve[] real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prions officials' safety and security" which "strongly counsels restraint" in recognizing a new Bivens remedy for such claims).

In sum, the court finds that plaintiff's claims present new Bivens contexts, and that special factors counsel against extending a damages remedy for these claims. Plaintiff therefore fails to plead cognizable Bivens claims.

Plaintiff also asserts state law tort claims against defendant Beck. A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, plaintiff's state law claims are dismissed without prejudice.

## CONCLUSION

Based on the foregoing, moving defendants' motions to dismiss (DE 45, 48, 50) are GRANTED, and plaintiff's motion for entry of default (DE 59) is DENIED. The federal constitutional claims against defendant Beck are dismissed pursuant to 28 U.S.C.

16

§ 1915(e)(2)(B)(ii). The state law claims are dismissed without prejudice. The clerk is DIRECTED to close this case, and to terminate as moot defendant Beck's pro se motion to file materials under seal and ex parte (DE 69).[9]

SO ORDERED, this the 29th day of September, 2021.

                                             LOUISE W. FLANAGAN
                                             United States District Judge

---

[9] Where the motion to seal is terminated as moot, the materials at docket entry 69 will remain under seal and ex parte but will not be considered by the court for any reason. See Local Civil Rule 79.2(b)(3).

17